```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
                                                                         :
ERIN PETTERSEN,                                                          :
                                                                         :
                              Plaintiff,                                 :
                                                                         :
                 -against-                                               :
                                                                         :      REPORT AND
VOLCANO CORPORATION, PHILIPS                                             :      RECOMMENDATION
ELECTRONIC CORPORATION, and SCOTT                                        :      18-cv-03021 (PKC) (PK)
HUFF (in his individual capacity),                                       :
                                                                         :
                              Defendants.                                :
                                                                         :
------------------------------------------------------------------------ X
```

**Peggy Kuo, United States Magistrate Judge:**

On May 22, 2018, Erin Pettersen ("Plaintiff") commenced this action against Volcano Corporation ("Volcano"), Philips Electronic Corporation North America ("Philips"), and Scott Huff ("Huff") (collectively, "Defendants"), alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), New York State Executive Law § 296, and New York City Administrative Code § 8-107. (Compl., Dkt. 1.)   On referral from the Honorable Pamela K. Chen is Defendants' motion to compel arbitration (the "Motion").  (Dkt. 27; *see* Order dated Sept. 9, 2019.)  For reasons stated below, the undersigned respectfully recommends that the Motion be granted.

## BACKGROUND

On December 31, 2013, Volcano sent a letter to Plaintiff, offering her a position with Volcano as Territory Manager in the Long Island, New York region ("Offer Letter"). (Declaration of Anise Owen ("Owen Decl.") ¶ 3, Dkt. 30; Ex. A to Declaration of Aaron Warshaw, Esq. in Support of Motion ("Warshaw Decl."), Dkt. 29-1.)  The Offer Letter included language that any

1

dispute relating to her employment must be submitted to binding arbitration ("Offer Letter Arbitration Clause"). (Ex. A to Warshaw Decl. at 2.) Plaintiff reviewed the Offer Letter with an attorney the day she received it. (Ex. F to Declaration of Jonathan Tand, Esq. in Opposition to Motion ("Tand Decl."), Pettersen Dep. 25:20 – 26:17, Dkt. 32-6.) She then accepted the offer with a start date of January 13, 2014. (Owen Decl. ¶ 3.)

In an email dated January 2, 2014, Volcano's then-Recruiting Coordinator Anise Owen informed Plaintiff of "next steps," including that Plaintiff "will receive a separate email from XpressHR OnBoarding with instructions to complete your new hire forms[;] please complete on or before your start date to ensure you are all set up with Payroll." (Ex. D to Warshaw Decl. at 2, Dkt. 29-4.) On or about January 2, 2014, Plaintiff received an email from the Xpress HR Onboarding system containing links to access the New Hire Portal and New Employee Paperwork. (Ex. C to Warshaw Decl. at 1, Dkt. 29-3; Owen Decl. ¶ 5.) In an email dated January 6, 2014, Plaintiff informed Owen, "I received the email from XpressHR Onboarding and will complete the new hire forms shortly." (Ex. D to Warshaw Decl., at 2; Owen Decl. ¶ 6.)

Using the Xpress HR Onboarding system, all incoming employees "were required to click through each and every agreement, policy, form, and document that was part of the New Employee Paperwork." (Owen Decl. ¶ 7.) The system required all new employees to create unique usernames and passwords to access the onboarding documents. (*Id.* ¶ 8.) All employees were required to read all the onboarding documents and, on some documents, digitally sign them, before they were permitted to begin employment. (*Id.* ¶¶ 9-10.) One of the documents required to be signed was Volcano's Arbitration Agreement (the "Arbitration Agreement"), which reads in part:

> Volcano Corporation ("Volcano") and I each agree to submit to final and binding arbitration any controversy, dispute or claim we could otherwise pursue in court arising out of or relating to my recruitment, hiring, employment, or the termination of my employment. This includes, without limitation, any claim against Volcano or any of its employees or agents based on any state or federal statute (including

2

> claims for employment discrimination, retaliation or harassment, unpaid wages, or based on the California Labor Code) ….

(Ex. E. to Warshaw Decl. at 1, Dkt. 29-5; Owen Decl. ¶¶ 15-16.)  The Arbitration Agreement also provides that arbitration arising out of the claims covered by the agreement shall take place in San Diego, California. (Ex. E. to Warshaw Decl. at 1.)

On January 11, 2011, someone using Plaintiff's unique username and password digitally signed the Arbitration Agreement, indicating

> I HAVE READ, UNDERSTAND, AND AGREE TO THE FOREGOING, AND I UNDERSTAND THAT THIS AGREEMENT PROVIDES FOR THE WAIVER OF THE PARTIES' RESPECTIVE RIGHTS TO A TRIAL BY A COURT OF LAW AND/OR BY A JURY ON THE CLAIMS COVERED BY THIS AGREEMENT.

(Ex. E to Warshaw Decl. at 2; Owen Decl. ¶ 17.)  A copy of the Arbitration Agreement submitted by both parties contains the typed words "Digitally Signed By:  Erin M Pettersen on 1/11/2014" immediately above the "Employee Signature" line, constituting Plaintiff's electronic signature.  (Ex. E to Warshaw Decl. at 2; Ex. D to Tand Decl. at 2, Dkt. 32-4.)  Owen countersigned the Arbitration Agreement on Volcano's behalf on January 15, 2014, using an electronic signature with her name. (Ex. E to Warshaw Decl. at 2; Ex. D to Tand Decl. at 2; Owen Decl. ¶ 18.)  At least two other documents – "Volcano Corporation Policy Against Harassment," and "Employee Proprietary Information and Inventions Agreement"– were similarly signed.  (Ex. F to Warshaw Decl. at 4, Dkt. 29-6; Ex. G to Warshaw Decl. at 5, Dkt. 29-7.)

Plaintiff began her employment at Volcano on January 13, 2014.  (Owen Decl. ¶ 20.) Plaintiff alleges that during her employment, she was "subjected to a hostile work environment representing discrimination on the basis of her gender and retaliation" in violation of Title VII and New York law.  (Plaintiff's Memorandum of Law in Opposition to Motion ("Pl.'s Memo in Opp.") at 2, Dkt. 31.)  Plaintiff claims that this treatment led in February 2017 to her being hospitalized and

3

beginning short-term disability leave. (Complaint ¶¶ 70-72.)

Plaintiff filed the Complaint on May 22, 2018. (Dkt. 1.) The parties conducted discovery on the issue of whether to compel arbitration, and Defendants filed the Motion on September 6, 2019. (Dkt. 27.)

## LEGAL STANDARD

Arbitration is governed by 9 U.S.C. § 1 *et seq.* (the Federal Arbitration Act or "FAA"), which provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court. . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The Supreme Court has held that "by its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The FAA "expresses a liberal congressional policy favoring arbitration, and …any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 223 (2d Cir. 2001); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

When evaluating a motion to compel arbitration, courts must determine: (i) whether the parties agreed to arbitrate, (ii) the scope of the arbitration agreement (and whether the current dispute falls within that scope), and (iii) if federal statutory claims are asserted, whether Congress intended those claims to be non-arbitrable. *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 844 (2d Cir. 1987).

The moving party has the initial burden of showing that an agreement to arbitrate exists. *Jillian Mech. Corp. v. United Serv. Workers Union Local 355*, 882 F. Supp. 2d 358, 364 (E.D.N.Y. 2012).

The non-moving party then "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). If there is an issue of fact as to whether an agreement to arbitrate exists, a trial must be held on the matter. 9 U.S.C. § 4; *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). In determining whether there is an issue of fact, courts apply the same standard as a summary judgment analysis. *Jillian,* 882 F. Supp. 2d at 363. A genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Cupples v. Valic Fin. Advisors, Inc.*, No. 13-CV-4501 (JS) (AKT), 2014 WL 4662272, at *3 (E.D.N.Y. Sept. 18, 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The non-movant must "'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quotations omitted). "'[M]ere speculation or conjecture as to the true nature of the facts'" is not enough. *Id.* (quotations omitted).

## ANALYSIS

I. **Arbitrability of Plaintiff's Claims**

A. **Whether the Parties Agreed to Arbitrate**

The first question a court must ask is whether the parties entered into an agreement to arbitrate. "Only when an agreement to arbitrate is found to exist does a court proceed to decide whether a given dispute falls within the scope of that agreement." *Spear, Leeds & Kellogg v. Cent. Life Assurance Co.*, 85 F.3d 21, 25 (2d Cir. 1996).

When determining whether a contract to arbitrate has been established for purposes of the FAA, federal courts should apply "ordinary state-law principles that govern the formation of contracts" to decide "whether parties have agreed to arbitrate a certain matter." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). To form a contract in New York, there must be "an offer, acceptance, consideration, mutual assent and intent to be bound." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) (citation omitted). "A contract may be formed by words or by conduct

5

that demonstrate the parties' mutual assent." *Manigault v. Macy's E., LLC*, 318 F. App'x 6, 8 (2d Cir. 2009).

Defendants contend that there was a valid agreement to arbitrate, pointing to the Arbitration Agreement that contains Plaintiff's electronic signature, countersigned by Volcano. (Ex. E to Warshaw Decl. at 2.) They also rely on the declaration of Anise Owen, who described the requirements of Volcano's onboarding process that each prospective employee create a unique username and password through the Xpress HR Onboarding system, and that they read the documents and, on some paperwork – including the Arbitration Agreement – digitally sign them. (Owen Decl. ¶¶ 7-11, 15.) Owen attested, "I am not aware of any way that employees could skip their review and/or signing of any of the onboarding documents to complete the Xpress HR Onboarding system. In other words, each document had to be sequentially accessed to complete onboarding." (*Id.* ¶ 11.) She further stated that any employees with technical issues could contact Volcano for assistance. (*Id.* ¶ 12.)

Plaintiff disputes that there is a valid agreement to arbitrate, contending that "she has never seen and did not sign" the Arbitration Agreement. (Pl.'s Memo in Opp. at 2.) Plaintiff maintains that the electronic signature purporting to be hers is not genuine (*id.* at 8) and testified at her deposition that she did not sign the Arbitration Agreement or the other two documents containing her electronic signature. (Pettersen Dep. 47:10-11, 48:15-16, 49:4.) As support, she contends that the computer she had at the time was incapable of running the software necessary to electronically sign the documents, because it was "an older iMac" and she "could not put Internet Explorer on that." (*Id.* 18:4-7.) She testified that she tried to access the Xpress HR system on or about January 2, 2014, but was unable to do so. (Pettersen Dep. 41:15-19.) She stated it was her practice to print copies of documents she received, which was not done with the onboarding documents. (*Id.* 44:8-9.) Plaintiff also points to Owen's statement that Plaintiff did not "raise any objections, questions,

6

or concerns" regarding the Arbitration Agreement (Owen Decl. ¶ 21) as evidence that Plaintiff did not sign and was not aware of the document, since Plaintiff had been so concerned about the Offer Letter Arbitration Clause that she consulted an attorney about it. (Pl.'s Memo in Opp. at 5, 8.)

Plaintiff claims generally that electronic signatures are "inherently less reliable than holographic signatures," pointing to Local Bankruptcy Rule 9011-1 of the Eastern District of New York as support for her contention that courts "do not accept electronic signature alone when it comes to matters as important as representations to the Court," and to several bankruptcy decisions which state that holographic signatures are important. (Pl.'s Memo in Opp. at 6-7 (citing *In re Mayfield*, Case No. 16-22134-D-7 (Bankr. E.D. Cal. Jul. 15, 2016); *Dougherty v. Dupes*, Civil Action No. 1:17-CV-01541-JFC (M.D. Pa. Aug. 15, 2018)).)

The undersigned notes that bankruptcy procedures have no controlling effect on this Court and, lacking expertise in that forum, declines to examine those rules to determine whether electronic signatures are uniformly rejected. More importantly, Plaintiff is incorrect in her position that electronic signatures are inherently unreliable. The New York State Electronic Signatures and Records Act, N.Y. Tech. Law § 304(2), specifically permits both electronic and hand-written signatures:

> [A]n electronic signature may be used by a person in lieu of a signature affixed by hand. The use of an electronic signature shall have the same validity and effect as the use of a signature affixed by hand.

Arbitration agreements signed with an electronic signature under similar circumstances have been found to be valid. *See, e.g., Gonder v. Dollar Tree Stores, Inc.*, 144 F. Supp. 3d 522, 528 (S.D.N.Y. 2015); *Savarese v. J.P. Morgan Chase*, No. 16-CV-321 (JFB) (SIL), 2016 WL 7167968, *4 (E.D.N.Y. Nov. 16, 2016), *report and recommendation adopted*, 2016 WL 7176601 (E.D.N.Y. Dec. 7, 2016); *Perez v. Ruby Tuesday, Inc.*, No. 6:16-CV-795, 2019 WL 355637, *4 (N.D.N.Y. Jan. 28, 2019). Circumstantial evidence supporting the validity of an electronic signature was sufficient, *see Savarese,* 2016 WL

7167968 at *4., and no court required "direct evidence that the Plaintiff signed the document in question," as Plaintiff argues is required. (Pl.'s Memo in Opp. at 8.)

In *Savarese,* the court found sufficient evidence to support the validity of an electronic signature where the defendant bank explained that "all candidates-for-hire receive an offer letter through a 'unique web-link' sent to an email address provided by the candidate, and are then 'required to review the offer letter, and enter his/her e-signature in two areas: one accepting the offer of employment and agreeing to comply with the Bank's Code of Conduct and another agreeing to the Bank's arbitration program.'" *Savarese,* 2016 WL 7167968, at *4. The court found unavailing plaintiff's arguments that more is required to support the genuineness of the electronic signature – such as identification numbers of computers involved in the transaction or an exclusive token number to authenticate a secured transaction. *Id.* at *5. The court also rejected the plaintiff's contention that he did not remember signing any such agreement. *Id. See also, Gonder,* 144 F. Supp. 3d at 528 ("A mere assertion that one does not recall signing a document does not, by itself, create an issue of fact as to whether a signature on a document is valid—especially in the absence of any evidence the document was fabricated.")

Similarly, in *Perez,* the court rejected the plaintiff's assertion that her electronic signature on an arbitration agreement was not genuine because she was not working at the time the agreement was signed, and thus could not have signed it. Characterizing this argument as "made without the support of a shred of evidence that might cast doubt on the authenticity of the various exhibits marshaled by defendants …," the court concluded that the plaintiff's "self-serving refusal to acknowledge the fact of her signature on the document is insufficient to raise a genuine dispute of fact…." *Perez,* 2019 WL 355637, at *4.

Like the plaintiff in *Perez,* Plaintiff argues that she did not, and could not, have signed the Arbitration Agreement or the other onboarding documents. Plaintiff's contention that her

8

computer at the time lacked the technical capability to access the required onboarding documents does not rise to the level of doubt sufficient to question the validity of the electronic signatures offered by Defendants. A signature "should not be overthrown upon evidence of a doubtful character, such as the unsupported testimony of interested witnesses, nor upon a bare preponderance of evidence, but only on proof so clear and convincing as to amount to a moral certainty." *Katnerakis v. Minos Realty I, LLC*, 151 A.D.3d 950, 951 (2d Dep't 2017) (quotations omitted). Plaintiff does not foreclose her ability to have accessed a different computer to review the documents she knew were necessary for her to begin work at Volcano. In her email of January 6, 2014 to Owen, she acknowledged she had received the email from Xpress HR, and made no mention of any technical problems that would delay or impede her ability to complete those documents, despite her testimony that she had been unable to access the link on or about January 2, 2014. (Pettersen Dep. 41:15-20, 43:12-16.) She informed Owen simply that she "will complete the new hire forms shortly." (Ex. D to Warshaw Decl. at 2.) Five days later, her electronic signature appeared on the required forms, and two days later she began her employment at Volcano. (Owen Decl. ¶¶ 17, 20.) Plaintiff does not claim that she ever sought to access the Xpress HR documents again, even after she received her work-issued laptop from Volcano, and even though she knew she was required to review and sign them as a condition of employment. (Pettersen Dep. 37:14-16.)

Once Defendants have made a prima facie showing that an agreement to arbitrate exists, Plaintiff must "set forth specific facts showing that there is a genuine issue for trial"; "mere speculation or conjecture as to the true nature of the facts" is not enough. *Cupples*, 2014 WL 4662272, at *3 (quotations omitted.) Plaintiff's disclaimer of her electronic signature does not present a genuine issue for trial and amounts to mere speculation that someone else could have – and would have – affixed her signature instead of her.

9

Regardless of the validity of Plaintiff's electronic signature, Plaintiff is still bound by the Arbitration Agreement if her "conduct manifested an intent to adopt, or agree to, the unsigned" agreement. *See Brown v. C. Volante Corp .,* 194 F.3d 351, 355 (2d Cir. 1999); *Thomas v. Pub. Storage, Inc.*, 957 F. Supp. 2d 496, 499 (S.D.N.Y. 2013) ("Plaintiff's signature, however, is not necessary to establish her assent to Defendants' policy regarding the arbitration of employment-related disputes."); *Brown Bros. Elec. Contractors v. Beam Const. Corp.*, 361 N.E.2d 999, 1001 (1977) ("In determining whether the parties entered into a contractual agreement and what were its terms, it is necessary to look, rather, to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds."); *Genesco*, 815 F.2d at 846 ("it is well-established that a party may be bound by an agreement to arbitrate even absent a signature.") When an individual begins employment with the understanding that the employer has an arbitration policy, there is an inference that the individual agrees to the terms of that policy. *See Manigault v. Macy's E., LLC*, 318 F. App'x 6, 8 (2d Cir. 2009) (plaintiff agreed to arbitration by continuing with her employment after receiving notice of employer's dispute resolution program.).

There is no dispute that before she began employment, Plaintiff was aware, through the Offer Letter Arbitration Clause, that Volcano had a policy to arbitrate employment disputes. (Pettersen Dep. 23:21.) Although Plaintiff claims she believed the scope of the Offer Letter Arbitration Clause was narrower than that in the Arbitration Agreement (*id.* 25:19, 26:20-22), she nevertheless agreed to Volcano's arbitration policy when she began and continued her employment there.

Accordingly, the undersigned finds that no issue of material fact has been raised regarding the parties' agreement to arbitrate.

### B. Whether Plaintiff's Claims Fall Within the Scope of the Agreement

Because "arbitration is a matter of contract," the "parties cannot be compelled to arbitrate

10

issues that they have not specifically agreed to submit to arbitration." *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003). Nevertheless, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (2002). Language is unambiguous that is "definite and precise in meaning, unattended by danger of misconception in the purpose of the policy itself, and concerning which there is no reasonable basis for a difference of opinion." *Breed v. Ins. Co. of N. Am.*, 385 N.E.2d 1280, 1282 (1978).

The scope of the Arbitration Agreement is unambiguous and specifically covers any legal disputes "arising out of or relating to … recruitment, hiring, employment, or the termination of [Plaintiff's] employment" and includes "any claim against Volcano or any of its employees or agents based on any state or federal statute (including claims for employment discrimination, retaliation or harassment …)…" (Ex. E to Warshaw Decl. at 1.) Title VII claims are encompassed within the scope of this language.

Plaintiff testified that she believed – and an attorney she consulted confirmed – that the Offer Letter Arbitration Clause does not cover the discrimination claims she has brought against Volcano. (Pettersen Dep. 23:24 – 25:10, 25:19, 26:20-22.) Rather, she read the phrase "any dispute" that subsequently develops between her and Volcano "relating to [her] employment" as being limited to those involving actions Volcano could take against her as an at-will employee, *i.e.,* terminations, "promotions, transfers, demotions, suspensions … employee discipline … [changes in] position, duties … work location … compensation and benefits." (*See* Ex. A to Warshaw Decl. at 2.) A party's subjective belief regarding the scope of arbitration is irrelevant. *See Arnold v. D'Amato*, No. 14-CV-6457 (PAE), 2015 WL 4503533, at *8 (S.D.N.Y. July 23, 2015) ("[T]he Agreement's text, not [plaintiff's] subjective beliefs, governs.").

Moreover, this reading of the Offer Letter Arbitration Clause is strained. In cases of

11

ambiguity, "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*, 460 U.S. 1 at 24–25. "[L]anguage excluding certain disputes from arbitration must be 'clear and unambiguous' or 'unmistakably clear.'" *Genesco*, 815 F.2d at 847.

Accordingly, the undersigned finds that the claims in this case fall within the scope of the parties' agreement to arbitrate.

### C. Whether Congress Intended the Claims to Be Non-Arbitrable

"It is well settled that Title VII claims can be the subject of an arbitration agreement, including a pre-dispute compulsory arbitration agreement…." *McCoy v. Dave & Buster's, Inc.*, No. 15-CV-0465 (JFB) (AYS), 2018 WL 550637, at *5 (E.D.N.Y. Jan. 24, 2018); *see also Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) (affirming the district court's order to arbitrate a sexual harassment suit brought under Title VII and state law); *Feroce v. Bloomingdale's Inc.,* 2014 WL 294199, at *4 (E.D.N.Y. Jan. 24, 2014) ("Where a valid Dispute Resolution Agreement exists, the FAA requires that federal statutory claims arising from an employment relationship, including Title VII claims, be subject to mandatory arbitration."); *Teah v. Macy's Inc.*, 2011 WL 6838151, at *3 (E.D.N.Y. Dec. 29, 2011) ("Arbitration clauses in employment contracts . . . are governed by the FAA, and their scope may properly extend to Title VII claims brought by the employee.")  The Supreme Court has held that "arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001).

Accordingly, the undersigned finds that Congress did not intend the claims to be non-arbitrable.

In light of the foregoing, the undersigned respectfully recommends that Plaintiff should be compelled to arbitrate her claims.

II. **Stay of the Proceedings in This Case**

Section 3 of the FAA requires a stay of proceedings in cases where all claims have been referred to arbitration: "[T]he court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, **shall** … stay the trial of the action until such arbitration has been had …." 9 U.S.C. § 3 (emphasis added). Such a stay is "necessary." *Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015).

Accordingly, the undersigned finds that the proceedings in this case must be stayed pending completion of arbitration.

## CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that the Motion be granted and the case be ordered to arbitration. Furthermore, the undersigned respectfully recommends that the case be stayed pending the conclusion of arbitration.

Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

                 **SO ORDERED:**

                 *Peggy Kuo*

                 PEGGY KUO
                 United States Magistrate Judge

Dated:   Brooklyn, New York
          September 8, 2020